**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benny Arce,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-25-02516-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Benny Arce's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Defendant") denial of Social Security benefits. (Doc. 14-3). The appeal is fully briefed, (Docs. 15, 17, 18), and the Court now rules.

**I.      BACKGROUND**

On appeal, this Court considers whether the ALJ erred by: (1) partially rejecting the medical opinions of Plaintiff's treating physician, and (2) rejecting Plaintiff's subjective symptom testimony.

        **A.  Factual Overview**

Plaintiff applied for a period of disability and disability insurance benefits on November 17, 2021, alleging disability beginning May 14, 2021, including coronary artery disease status post quadruple bypass surgery, hypertension, lumbar spine disorder, and obesity. (Doc. 14-3 at 16; Doc. 14-4 at 3). Plaintiff alleged that his cardiac symptoms—dizziness, fatigue, and shortness of breath—rendered him unable to work. (Doc. 14-3 at

21–22). Plaintiff's claim was initially denied on July 27, 2022, and upon reconsideration on May 24, 2023. (Doc. 14-3 at 16). Plaintiff requested a hearing before an ALJ, which was held on February 12, 2024. (Doc. 14-3 at 16). The ALJ issued his decision on June 21, 2024, finding that Plaintiff was not disabled under the Social Security Act from May 14, 2021, through the date of the decision. (Doc. 14-3 at 25). The SSA Appeals Council denied Plaintiff's request for review, and Plaintiff filed the present appeal. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC refers to his ability to perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id*. § 404.1545(a)(1). To determine a claimant's RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id*. §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five.

Finally, at Step Five, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id*. If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id*.

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since May 14, 2021, the alleged onset date." (Doc. 14-3 at 19–20). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: coronary artery disease status post coronary artery bypass graft x4, hypertension, lumbar spine disorder, and obesity. (Doc. 14-3 at 20).

At Step Three, the ALJ determined that Plaintiff did not have any impairment or

combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (Doc. 14-3 at 21). The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. The claimant can occasionally climb ramps and stairs, but never climb ladders or scaffolds. The claimant can frequently balance, and occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to hazards.

(Doc. 14-3 at 21).

At Step Four, the ALJ found that Plaintiff was capable of performing his past relevant work as a collections clerk, customer service representative, credit manager, training manager, and credit clerk. (Doc. 14-3 at 25). The vocational expert testified that given the RFC, Plaintiff could perform this past relevant work as actually and generally performed. (Doc. 14-3 at 25). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from May 14, 2021, through the date of the decision. (Doc. 14-3 at 25).

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Desrosiers v. Sec'y of Health and Human Servs*., 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences

from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination, and "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III.  DISCUSSION

Plaintiff argues the ALJ committed materially harmful error by: (1) rejecting the assessment from treating provider Joslynn Palomo, PA-C, without providing sufficient explanation of the supportability and consistency factors as required under the regulations, and (2) rejecting Plaintiff's subjective symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence. (Doc. 15 at 1–2). The Court addresses each argument in turn.

#### A. PA Palomo's Medical Opinion

Plaintiff's first challenge concerns PA Palomo's medical opinion. They assert the ALJ erred by rejecting PA Palomo's assessment without providing sufficient explanation supported by substantial evidence, including "failing to explain the consideration of supportability and consistency factors." (Doc. 15 at 17). Defendant argues that the ALJ reasonably considered PA Palomo's opinion. (Doc. 17 at 8).

##### 1.  Legal Standard for Evaluation of Medical Opinions

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted,*

*vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. *Id*. These regulations state that the ALJ "will not defer or give any specific evidentiary weight including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . .medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 20, 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including, whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo,* 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how she considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id*. (quotations and internal citations omitted). Accordingly, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id*. at 791. Rather, an ALJ's decision to discredit any medical opinion must simply be supported

by substantial evidence. *Id.* at 787.

As discussed previously, the ALJ, not the reviewing Court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Thus, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("[I]f the evidence can support either outcome, the [C]ourt may not substitute its judgment for that of the ALJ.").

### 2. The ALJ's Evaluation of PA Palomo's Opinion

PA Palomo completed a checkbox assessment form on July 3, 2023, opining that Plaintiff could stand and walk for less than two hours in an eight-hour day, sit for less than two hours, and lift and carry less than ten pounds. (Doc. 14-18 at 59). The form also restricted Plaintiff's ability to use his hands, bend, reach, and stoop, and indicated he would miss work up to six days per month due to dizziness, fatigue, and the fact he was "easily out of breath." (Doc. 14-18 at 59–60).

Regarding PA Palomo's assessment of Plaintiff, the ALJ found as follows:

Ms. Palomo's opinion is not supported by her treatment records, or the claimant's other examinations, and thus is not persuasive. Ms. Palomo treats the claimant at G&K Medical, but her exams show the claimant only with tenderness to [his] back, but does not indicate any restrictions in standing, sitting or lifting (Exhibit 12F). During some visits, there are no examinations (Exhibit 18F/2); but other visits show normal findings. Ms. Palomo wrote the opinion of the claimant's limitations on July 3, 2023, after examining the claimant during a visit on June 30, 2023. During that visit, the claimant was noted as well developed and well nourished with no acute distress. The claimant's heart and lung function was normal. The claimant's cranial nerves were normal and his balance, gait and stance was normal. There was no indication of difficulty walking, standing or sitting, or lifting and nothing to indicate that he may miss work (Exhibit 18F/7). By contrast, [t]he claimant was examined at the Core Institute on August 11, 2023 where he was found to have full and active range of motion of his right shoulder, his strength was full (5/5), and he had negative impingement tests (Exhibit 17F). Dr. Cunningham's exam the previous year in June 2022 showed the claimant to have normal sitting, a slightly shuffling gait, but he was able to move and

> stand independently without an assistive device. The claimant showed a normal range of motion of his shoulders and knees and his strength was full (5/5) (Exhibit 7F). Thus, Ms. Palomo's opinion is not supported by the medical evidence and is not persuasive.

(Doc. 14-3 at 24–25).

Plaintiff's challenge breaks down into three objections: (1) the ALJ erred by focusing on musculoskeletal findings when PA Palomo based her opinion on cardiac symptoms; (2) the ALJ improperly relied on 'no acute distress' notations; and (3) the ALJ's supportability analysis was inadequate. (Doc. 15 at 18–20). The Court addresses each of these alleged errors in turn.

### a. The Focus on Musculoskeletal Findings

PA Palomo completed a checkbox assessment form on July 3, 2023, opining that Plaintiff was unable to sustain even sedentary work due to "dizziness, [being] easily out of breath, [and] sudden fatigue." (Doc. 14-18 at 59). The form indicated that Plaintiff's impairments would cause him to be off-task at a "moderately severe" level (16-20% of an eight-hour workday) and that he would miss six or more days of work per month. (Doc. 14-18 at 60). The ALJ concluded that PA Palomo's opinion was unsupported by her own treatment records and other medical examinations in the record, which showed Plaintiff had normal heart and lung function and normal "balance, gait, and stance." (Doc. 14-3 at 24). Plaintiff argues the ALJ erred by citing unrelated musculoskeletal examination findings to discredit PA Palomo's opinion when her opinion was premised on Plaintiff's cardiac symptoms. (Doc. 15 at 18–19).

The Court acknowledges the ALJ's discussion would be easier to follow if every cited examination finding directly tracked the symptoms PA Palomo listed on the checkbox assessment form. But the Court reads the decision as a whole, and the ALJ was not required to discuss each piece of evidence in any particular location. *See Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013). Even where the ALJ's explanation is not perfectly organized, the Court will uphold the decision if the ALJ's path can reasonably be discerned from the record and the decision as a whole. *Alaska Dep't of Env't Conservation v. E.P.A.*,

540 U.S. 461, 497 (2004).

The ALJ identified several pieces of evidence that undermine PA Palomo's extreme assessment. First, citing PA Palomo's own treatment note from June 30, 2023, the ALJ noted that Plaintiff's "heart and lung function was normal." (Doc. 14-3 at 24; Doc. 14-19 at 8). This finding directly relates to PA Palomo's stated basis for her opinion—that Plaintiff was "easily out of breath." The same treatment note also stated that Plaintiff "passed the nuclear stress test" and that his "activities of daily living were normal." (Doc. 14-19 at 6–7). Essentially, PA Palomo's own treatment records showed normal cardiac function, normal activities of daily living, and a passed stress test—yet three days later she opined that Plaintiff could not sustain even sedentary work due to cardiac-related symptoms. The mismatch between PA Palomo's examination findings and her opinion regarding Plaintiff's extreme work restrictions constitutes substantial evidence supporting the ALJ's decision to discredit PA Palamo's assessment. *See Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003) (opinion may be discounted when inconsistent with the provider's own notes).

Second, the assessment form itself reveals that PA Palomo did not review treatment notes, records from other providers, radiographic reports, or laboratory reports before rendering her opinion. Question 10 on the checkbox form asks: "Have you considered and/or reviewed your treatment notes, records from other providers, radiographic reports, laboratory reports, patient's response to treatment, and/or other?" PA Palomo checked "No" and explained: "Work up is still in progress: sleep study, holter monitor, etc." (Doc. 14-18 at 60). PA Palomo's admission that she based her opinion on incomplete information—studies that had not yet been completed—undermines the supportability of her assessment. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may discount medical opinion that is "brief, conclusory, and inadequately supported by clinical findings"); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Third, the ALJ cited other medical evidence that was inconsistent with PA Palomo's

extreme limitations. Dr. Robert Gordon, a consultative examiner, evaluated Plaintiff in June 2022 and said he could perform light work, including standing and walking, for six hours in an eight-hour day. (Doc. 14-12 at 34–35). Dr. Gordon noted that Plaintiff "presented to the appointment with no assistive devices" and that he "no longer uses" the walker he was given after surgery. (Doc. 14-12 at 30, 34). Dr. Keith Cunningham, another consultative examiner, evaluated Plaintiff in April 2023 and similarly stated he could perform light work. (Doc. 14-12 at 37–44). Dr. Cunningham noted that Plaintiff was "independent with his ADLs and his personal needs," "able to drive and drove to the office today," and "does not use any assistive or orthotic devices at this time." (Doc. 14-12 at 37). The state-agency medical consultants at both the initial and reconsideration levels also opined that Plaintiff could perform light work. (Doc. 14-4 at 3–15, 18–25). Because this evidence suggests Plaintiff can perform light work—contrary to PA Palomo's opinion that he cannot sustain even sedentary work—it is inconsistent with PA Palomo's assessment. Accordingly, substantial evidence supports the ALJ's decision to find PA Palomo's opinion unpersuasive. *Matney*, 981 F.2d at 1019 ("The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

### b.  The ALJ's "No Acute Distress" Finding

In discrediting PA Palomo's opinion, the ALJ referenced PA Palomo's treatment notes finding that Plaintiff "was in no acute distress." (Doc. 14-3 at 24). Plaintiff argues that the ALJ's reliance on the "no acute distress" finding is insufficient because "acute" refers to rapid onset conditions, not chronic impairments. (Doc. 15 at 19). However, the ALJ did not rely solely on this finding. As discussed, the ALJ cited PA Palomo's documentation of normal cardiac function, normal activities of daily living, and Plaintiff's passed stress test—findings that directly relate to the cardiac symptoms PA Palomo cited as the basis for her opinion. The ALJ also cited multiple other medical opinions finding that Plaintiff was capable of performing light work. Even if the ALJ's reliance on PA Palomo's "no acute distress" findings was an insufficient basis, standing alone, to discredit

her, the ALJ provided other valid reasons supported by substantial evidence to discount PA Palomo's opinion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### c. The ALJ's Supportability Analysis

Plaintiff also asserts that the ALJ failed to perform an adequate supportability analysis. (Doc. 15 at 20). Ultimately, the Court need not address this argument at length because the ALJ reasonably found the opinion unpersuasive based on inconsistencies between PA Palomo's assessed limitations and her own treatment findings, as well as other medical evidence supporting light work. (Doc. 14-3 at 24–25). Because the ALJ's inconsistency analysis is supported by substantial evidence, any deficiency in the supportability discussion does not warrant reversal. *Archunde v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01993-PHX-JAT, 2025 WL 520534, at *6 (D. Ariz. Feb. 18, 2025) (citing *Woods*, 32 F.4th at 793 n.4 (indicating that even where an ALJ provides no supportability analysis for a medical opinion, the ALJ may properly find the opinion unpersuasive if there is an inconsistency finding supported by substantial evidence)); *see also Collins v. Colvin*, No. 23-35526, 2024 WL 5040992, at *2 (9th Cir. Dec. 9, 2024) (because the inconsistency of the doctor's opinion provided a sufficient basis to find it unpersuasive, "any error related to the supportability analysis counts as harmless and does not provide a basis for reversing").

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence. (Doc. 15 at 12). Defendant asserts that the ALJ reasonably considered Plaintiff's subjective complaints. (Doc. 17 at 3). The Court considers the argument below.

#### 1. Legal Standard for Evaluation of Subjective Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991)). If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the *power* to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added).

When assessing witness credibility, an ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

### 2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Doc. 14-3 at 22). The ALJ provided a summary of the medical evidence and found as follows:

> The claimant mentioned that he had a heart attack, but a review of the record does not reference a heart attack. The claimant was having a lot of chest pain and it was decided to do a bypass graft for the arteries of his heart (Exhibit 3F). This went well and the claimant's chest pain was resolved. The rest of the records show maintenance of his heart condition, but his exams are normal (Exhibits 4F, 9F). Overall, the record supports light work (Exhibits 12F, 17F).

(Doc. 14-3 at 23).

Plaintiff argues that the ALJ failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of his work-preclusive symptom testimony. (Doc. 15 at 15). Plaintiff testified that he stopped working in May 2021 due to cardiac issues and subsequent quadruple bypass surgery. (Doc. 14-3 at 40–42). He testified that he experiences daily headaches, constant dizziness, and fatigue. (Doc. 14-3 at 42–43). He stated that he naps four to six hours a day uncontrollably, falls asleep while sitting, and cannot cook because he forgets the stove is on. (Doc. 14-3 at 43–44, 50). He testified that he uses a walker and brought his cane to both consultative examinations. (Doc. 14-3 at 46). He also testified that the cardiac rehabilitation program stopped his participation due to dizziness and fall risk. (Doc. 14-3 at 50–51).

Substantial evidence—such as Plaintiff's inconsistent statements and medical evidence in the record—supports the ALJ's finding that Plaintiff's allegations about the degree of his limitations were not fully consistent with the record.

### a.  Inconsistent Statements Regarding Assistive Devices

Plaintiff testified that he started using a walker after his surgery in October 2021 and that he had his cane with him at both consultative examinations. (Doc. 14-3 at 46). As discussed above, both consultative examiners documented that Plaintiff arrived without assistive devices, and Dr. Gordon noted Plaintiff's report that he "no longer uses" the walker he was given after surgery. (Doc. 14-12 at 28, 30, 37). The state agency reviewer similarly noted "No AD use has been documented at visits." (Doc. 14-4 at 23). The ALJ could reasonably consider this evidence inconsistent with Plaintiff's description of ongoing balance problems severe enough to require a walker.

### b.  Inconsistent Statements Regarding Activities of Daily Living

Plaintiff testified he cannot do chores or cook safely and needs significant help from his son. (Doc. 14-3 at 44–45). However, as noted above, PA Palomo's own treatment note states Plaintiff's "activities of daily living were normal," and Dr. Cunningham found him "independent with his ADLs." (Doc. 14-19 at 7; Doc. 14-12 at 37). This evidence supports the ALJ's conclusion that Plaintiff's self-reported limitations were overstated.

### c. Objective Medical Evidence

The ALJ also reasonably relied on objective evidence suggesting improvement after bypass surgery and generally stable cardiac findings. (Doc. 14-3 at 22–23). Plaintiff reported feeling well after surgery with resolved chest pain, denied exertional shortness of breath at his January 2022 follow-up, and later records reflect that Plaintiff was "stable with no anginal complaints." (Doc. 14-3 at 22; Doc. 14-19 at 6). As discussed, multiple medical sources stated Plaintiff could perform light work. (Doc. 14-4 at 3–15, 18–25; Doc. 14-12 at 28–44). The ALJ could reasonably view this evidence as inconsistent with Plaintiff's testimony that dizziness, fatigue, and shortness of breath preclude all work activity.

Taken together, these inconsistencies and objective findings provide specific, clear, and convincing reasons, supported by substantial evidence, for the ALJ's evaluation of Plaintiff's subjective symptom allegations. *Smartt*, 53 F.4th at 499. Plaintiff's argument that the ALJ did not discuss every asserted symptom (including fatigue, napping, and cardiac rehabilitation) does not establish reversible error where the ALJ gave legally sufficient reasons that undermine the alleged degree of limitation and supported an RFC for light work with restrictions. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Ghanim*, 763 F.3d at 1163.

**IV.  ALTERNATIVE PROCEEDINGS**

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 15 at 21). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of benefits").

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 23rd day of February, 2026.

*James A. Teilborg*
Senior United States District Judge